667 A.2d 876

Gary GILCHRIST

v.

STATE of Maryland.

No. 111, Sept. Term, 1993.

Court of Appeals of Maryland.

Nov. 28, 1995.

Nancy M. Cohen, Assistant Public Defender, (Stephen E. Harris, Public Defender, both on brief), Baltimore, for Petitioner.

David R. Durfee, Jr., Assistant Attorney General, (J. Joseph Curran, Jr., Attorney General, both on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

ELDRIDGE, Judge.

The principal issue in this criminal case is whether the holding by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applies to peremptory challenges aimed at excluding white prospective jurors from the venire based on their race.

## I.

Gary Gilchrist was charged with distribution of cocaine and possession of cocaine with intent to distribute. On August 3, 1992, he was tried before a jury in the Circuit Court for Baltimore City.

Jury selection at Gilchrist's trial was done in accordance with the following procedure. The trial judge conducted voir dire of the prospective jurors. After the roll of prospective jurors was called, voir dire commenced, the attorneys made their challenges for cause to the trial judge, and the stricken jurors were dismissed. The clerk then called off the names and numbers of the remaining prospective jurors one at a time, proceeding down the jury list from the top. Both sides exercised their peremptory challenges to each prospective juror immediately after his or her name was called. If a prospective juror was not challenged, that person was seated in the jury box until twelve jurors were seated. Once twelve jurors were seated in the box, the court then offered the parties a second opportunity to exercise peremptory challenges against the jurors who were already seated. If any jurors were then struck by the parties' attorneys, the process would begin again with the clerk calling off the name of the next prospective juror on the list. Jury selection continued in this fashion until twelve unchallenged jurors were ultimately seated.

Prior to the jury box becoming filled the first time, the State and the defense had each exercised one peremptory challenge. Once twelve jurors were seated, the defendant's attorney then exercised a peremptory challenge against one of the seated jurors, resulting in that juror's dismissal. The

clerk then called off the next prospective juror on the list. This process continued, with the box continually filling and the defense exercising peremptories, directed either at a seated juror or at the next prospective juror on the jury list, until defense counsel had exercised seven peremptory challenges. All of the prospective jurors struck by the defense counsel to this point had been white. After the seventh prospective juror was challenged by defense counsel, the State raised an objection, arguing that the defense was attempting to remove all white prospective jurors from the jury in violation of the principles set forth in *Batson v. Kentucky, supra.* The prosecuting attorney stated:

"ASSISTANT STATE'S ATTORNEY: I don't know the name of the case, but it is the case that came down after [*Batson*] which indicates that there are—there is no right to any racially motivated strikes. And every strike so far exercised by the defense counsel has been of white jurors.

"Some of those jurors have not answered questions so it cannot be based on the fact that they gave answers that would indicate—

"THE COURT: Which juror are you questioning or do you want to go through a reason for each one of them?

"ASSISTANT STATE'S ATTORNEY: For each one.

"THE COURT: All right. That's seven jurors you've struck. They were all white. Let's go through them one by one and give me the reasons you struck them."

The court found the defendant's reasons for striking three of the jurors to be acceptable.[1] With respect to the remaining jurors, the following colloquy ensued:

### Juror 3

"DEFENSE COUNSEL: Judge, I personally, by looking at her—I see jurors in the box and I look at the way they relate to each other.

---

1. Two of the jurors were challenged by the defendant because they were crime victims, and the other juror was challenged because the defendant was uncomfortable with the way the juror stared at him.

"THE COURT: Well, how did she look?

"DEFENSE COUNSEL: [S]he reminded me of my Catholic School teacher that I didn't particularly like.... Her look ... at the other people who were in the [jury] box.

"THE COURT: That's not a satisfactory explanation."

### Juror 5

"DEFENSE COUNSEL: Judge, he was young. I didn't think particularly he would be a strong juror for my case by looking at him.

"THE COURT: And why was that?

"DEFENSE COUNSEL: Because I look at the way he fits into the persons that are on the panel. And what I'm trying to accomplish from the look of him, from the way he sat—

"THE COURT: Well, how did he look from the way he was sitting that made you feel he was not good, other than the fact he was white and young?

"DEFENSE COUNSEL: Well, he—number one, most of the jurors would look at my client and look over at the table. He was just like sitting there not relating to anything in the room.

"THE COURT: Because he wasn't relating to your client?

"DEFENSE COUNSEL: Not relating to anything or anyone in the room. Frankly, I don't think [he] even wanted to be here.

"THE COURT: I don't think that's a satisfactory explanation either."

### Juror 137

"THE COURT: Why?

"DEFENSE COUNSEL: Oh why? He was—I don't have anything written on here.

"THE COURT: Let the record reflect he was a young white male in a navy blazer and khaki slacks.

"DEFENSE COUNSEL: I believe he was—I remember him, Judge, and ... we say he was unacceptable.

"THE COURT: And [why] was that?

\* \* \* \* \* \*

"DEFENSE COUNSEL: His clothing, his manner.

"THE COURT: What was wrong with his clothing and his manner?

"DEFENSE COUNSEL: Well, his manner and his clothing suggest to me ... that he wouldn't be able to relate to my client because in this particular case there are—there is the police officer's word against my client's word. My client may very well testify. And because of those things—

"THE COURT: Well, how do his clothing have anything to do with it? I don't make the connection.

"DEFENSE COUNSEL: The clothing, Judge, means when you go to Brooks Brothers and buy a suit, and maybe not the suit—

"THE COURT: The people who go to Brooks Brothers are more likely to believe police than defendants; is that what you're saying?

"DEFENSE COUNSEL: Not necessarily so. But given the little information I have about them, I must make judgments about these individuals.

"THE COURT: Well, what—well, all right. That's right. So what information did you have ... that required you to strike him?

"DEFENSE COUNSEL: ... [H]e's a student. We don't know what he's studying—

"THE COURT: Well, we could have asked him.

"DEFENSE COUNSEL: Well, some courts don't let you bring them up and ask them.

"THE COURT: But you didn't ask.

"DEFENSE COUNSEL: He seems rather studious.

"THE COURT: Well, so what if he's studious? He's 21 years old.

"DEFENSE COUNSEL: Right. He has 16 years of education.

"THE COURT: Right.

"DEFENSE COUNSEL: That means he's done his college.

"THE COURT: Right.

"DEFENSE COUNSEL: ... But for those reasons, Judge,—

"THE COURT: That's an unacceptable reason.

"DEFENSE COUNSEL: Those are my reasons.

"THE COURT: I mean, that's no reason at all. You're just citing his biography and saying those are reasons.

"DEFENSE COUNSEL: I have nothing else. Is the Court saying I can't strike him at all because—

"THE COURT: The Court is saying you have to, when you have struck seven jurors, potential jurors, ... and they are all white and they all have different profiles, you're going to have to come up with a satisfactory explanation that persuades me that your reason for striking him was not racial. I mean, that's what the case law is saying.

"DEFENSE COUNSEL: I know, Judge. But I haven't said anything to you now that would suggest that the reasons were racial. Nothing.

"THE COURT: Well, I'm not quite sure.... When you say that someone comes in a navy blazer and khaki slacks, and because he's a student and because of his address that's a reason for striking him—

"DEFENSE COUNSEL: I said I don't know anything about his address because I don't know the address. But, Judge, that could have been a black man. Are we saying that black men don't wear blazers and khaki pants?

"THE COURT: All right. That's—I don't buy that as a satisfactory explanation.

"DEFENSE COUNSEL: Very well."

With regard to the final juror struck, Juror Number 155, defense counsel was unable to recall her reasons for exercising

the peremptory challenge. The court found that "that's not a satisfactory reason at all." In summation, the court said,

"She [defense counsel] did give satisfactory reasons for [the two jurors] who are victims.

"On the other hand, the other people she's struck, all of them are white, none of them have particular profiles. She hasn't seemed to come up with adequate answers."

The court excused the entire jury pool, including those members of the jury already chosen, and started jury selection anew with an entirely different pool of potential jurors. A second jury was chosen, and defense counsel answered affirmatively when the court asked if it was acceptable. The defendant was convicted of both charges by the second jury, and the court sentenced him to serve five years imprisonment for each conviction, the terms to run concurrently.

Gilchrist took an appeal to the Court of Special Appeals, which affirmed. *Gilchrist v. State*, 97 Md.App. 55, 627 A.2d 44 (1993). His principal argument was that the *Batson* holding was inapplicable to peremptory challenges against white potential jurors. The defendant argued, alternatively, that even if *Batson* were applicable, the trial court erred in determining that the prosecution had made a *prima facie* showing of discrimination. The State both disagreed with the defendant's contentions and, alternatively, argued that any error which may have occurred was not preserved for appellate review because defense counsel waived her objections to the first jury panel when she stated that the second jury panel was acceptable to the defendant. Moreover, according to the State, any error that the trial court may have committed was harmless because the remedy for a violation would have been a new trial, which is essentially what the defendant received when the trial court impaneled the second jury.

The Court of Special Appeals held that the *Batson* issue was not waived by defense counsel's acceptance of the second jury. Nonetheless, the intermediate appellate court held that *Batson* was applicable to peremptory strikes exercised against white prospective jurors. The appellate court went on to hold

that the trial court did not err in finding that a *prima facie* case of discrimination had been established and that the reasons offered by defense counsel were unsatisfactory. Furthermore, the Court of Special Appeals determined that the trial court ordered the proper remedy when it dismissed the first jury pool and started jury selection anew.

The defendant petitioned this Court for a writ of certiorari, raising essentially the same issues which he had raised in the intermediate appellate court. The State filed a conditional cross-petition for a writ of certiorari, reiterating its contention that the *Batson* issue was waived when the defense counsel stated that the second jury was acceptable. We granted both petitions, 332 Md. 741, 633 A.2d 102 (1993).

## II.

As a threshold matter, we consider the State's contention that the defendant waived or abandoned his objection to discharging the first jury pool when his counsel unequivocally stated that the jury chosen from the second pool was "acceptable."

This Court in a series of cases has taken the position that a defendant's claim of error in the inclusion or exclusion of a prospective juror or jurors "is ordinarily abandoned when the defendant or his counsel indicates satisfaction with the jury at the conclusion of the jury selection process." *Mills v. State,* 310 Md. 33, 40, 527 A.2d 3, 6 (1987), *vacated on other grounds,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). *See Foster v. State,* 304 Md. 439, 450–451, 499 A.2d 1236, 1241–1242 (1985), *reconsideration denied,* 305 Md. 306, 503 A.2d 1326, *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Thomas v. State,* 301 Md. 294, 310, 483 A.2d 6, 14 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *White v. State,* 300 Md. 719, 729–731, 481 A.2d 201, 205–207 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985); *Calhoun v. State,* 297 Md. 563, 579–580, 468 A.2d 45, 52 (1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846 (1984); *Couser v. State,* 282 Md. 125,

129, 383 A.2d 389, 391, *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978); *Glover, Robinson & Gilmore v. State,* 273 Md. 448, 330 A.2d 201 (1975); *Neusbaum v. State,* 156 Md. 149, 143 A. 872 (1928).

The principle set forth in the above-cited cases, however, relates to a complaint about the exclusion of a prospective juror from, or the inclusion of a prospective juror in, the jury which tried the defendant. None of these cases involved the situation where there were two separate jury pools, where the complaint related to the tentative jury panel drawn from the first pool, and where the jury which heard the case was drawn from the second pool.

When a party complains about the exclusion of someone from or the inclusion of someone in a particular jury, and thereafter states without qualification that the same jury as ultimately chosen is satisfactory or acceptable, the party is clearly waiving or abandoning the earlier complaint about that jury. The party's final position is directly inconsistent with his or her earlier complaint.

Nevertheless, where the objection was not directly "aimed at the composition of the jury ultimately selected," we have taken the position that the objecting party's "approval of the jury as ultimately selected ... did not explicitly or implicitly waive his previously asserted ... [objection, and his] objection was preserved for appellate review." *Couser v. State, supra,* 282 Md. at 130, 383 A.2d at 392.

In the case at bar, when Gilchrist's attorney said that the second jury panel was "acceptable," her statement related only to the second jury panel. Having no objections to the manner in which the second jury was selected and to the composition of the second jury is not inconsistent with the complaints relating to the first jury. We agree with the Court of Special Appeals that defense counsel's finding the second jury panel acceptable "has no bearing on whether ... error occurred in dismissing the first panel." 97 Md.App. at 71, 627 A.2d at 52.

### III.

The defendant contends that white persons do not constitute "a cognizable racial group" within the meaning of that phrase as used by the Supreme Court in *Batson v. Kentucky, supra*, 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. To be a cognizable racial group, Gilchrist contends, the group's members must "have been or are currently subjected to discriminatory treatment," *U.S. v. Bucci*, 839 F.2d 825, 833 (1st Cir.) (holding that Italian–Americans are not a cognizable group for purpose of *Batson* principle), *cert. denied*, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988). He argues that *Batson* was intended to serve merely as a remedial measure to address historical discrimination in jury selection. In particular, he cites the long history of discrimination against African–Americans in jury selection, and concludes that "white persons are not entitled to the application of *Batson* since they are clearly not a group that has been 'subjected to discriminatory treatment.'" (Petitioner's brief at 21).

"The function of the [peremptory] challenge is ... to eliminate extremes of partiality on both sides, [and] to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise." *Swain v. State of Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759, 772 (1965). *Accord: J.E.B. v. Alabama ex rel. T.B.*, 114 S.Ct. 1419, 1425–1426 and n. 8, 128 L.Ed.2d 89, 102 and n. 8 (1994); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620, 111 S.Ct. 2077, 2083, 114 L.Ed.2d 660, 673 (1991); *Vaccaro v. Caple*, 33 Md.App. 413, 416, 365 A.2d 47, 49–50 (1976).

Historically, a party has been given wide latitude in making peremptory challenges. *See Batson v. Kentucky, supra*, 476 U.S. at 91, 106 S.Ct. at 1720, 90 L.Ed.2d at 84; *Parker v. State*, 227 Md. 468, 470, 177 A.2d 426, 427 (1962); *Turpin v. State*, 55 Md. 462 (1881). The Supreme Court observed in *Swain v. State of Alabama, supra*, 380 U.S. at 220, 85 S.Ct. at 836, 13 L.Ed.2d at 772, that "[t]he essential nature of the peremptory challenge is that it is one exercised without a

reason stated, without inquiry and without being subject to the court's control.... [T]he peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable" than that required for a challenge for cause.

The right to exercise peremptory challenges, however, is not absolute.[2] The Supreme Court has long recognized that jurors "should be selected as individuals, on the basis of individual qualifications, and not as members of a race." *Cassell v. State of Texas*, 339 U.S. 282, 286, 70 S.Ct. 629, 631, 94 L.Ed. 839, 847 (1950) (Reed, J., announcing judgment of the Court). In *Swain v. State of Alabama, supra*, 380 U.S. at 203–205, 85 S.Ct. at 826–827, 13 L.Ed.2d at 763–764, the Supreme Court recognized that the State's exercise of peremptory strikes to exclude potential jurors from the venire on the basis of race was unconstitutional. It was not until the Supreme Court's opinion in *Batson v. Kentucky, supra*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, however, that the Court established the means for a party to challenge alleged racially motivated peremptory challenges by the other party based solely on the latter's actions in that case.

The Supreme Court in *Batson* articulated at least three separate rationales underlying its determination that race-based peremptory challenges are unconstitutional. First, "[t]he Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race...." *Batson v. Kentucky, supra*, 476 U.S. at 86, 106 S.Ct. at 1717, 90 L.Ed.2d at 80. Second, the excluded juror's equal protection rights are violated when the juror is challenged because of his or her race. 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81. Third, the Court

---

**2.** There is no constitutional right to a peremptory challenge. *J.E.B. v. Alabama ex rel. T.B.*, 114 S.Ct. 1419, 1426 n. 7, 128 L.Ed.2d 89, 102 n. 7 (1994); *Georgia v. McCollum*, 505 U.S. 42, 57–58, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33, 50 (1992); *King v. State Roads Comm'n*, 284 Md. 368, 396 A.2d 267 (1979). In Maryland, the right to exercise peremptory challenges in criminal cases is granted by Maryland Code (1974, 1995 Repl. Vol.), § 8–301 of the Courts and Judicial Proceedings Article, and Maryland Rule 4–313.

explained, the harm that stems from race-based peremptory challenges "extends beyond that inflicted on the defendant and the excluded juror to touch the entire community.... [It] undermine[s] public confidence in the fairness of our system of justice." *Ibid.*

The majority of courts throughout the country which have considered *Batson's* applicability to excluded white prospective jurors have determined that the same reasoning underlying the Court's decision in *Batson* applies with equal force to race-based peremptory challenges exercised against white prospective jurors. *See Government of Virgin Islands v. Forte,* 865 F.2d 59, 64 (3d Cir.1989); *State v. Knox,* 609 So.2d 803 (La.1992); *State v. Davis,* 830 S.W.2d 469 (Mo.App.1992); *People v. Davis,* 142 Misc.2d 881, 892–893, 537 N.Y.S.2d 430, 436–437 (1988); *People v. Gary M.,* 138 Misc.2d 1081, 1090, 526 N.Y.S.2d 986, 994 (1988). *See also Elliott v. State,* 591 So.2d 981, 982–984 and n. 3 (Fla.App.1991) (deciding on state constitutional grounds that whites may not be peremptorily struck from the jury pool based on race). *Cf. Roman v. Abrams,* 822 F.2d 214, 227–228 (2d Cir.1987) (whites constitute a cognizable racial group for purposes of the Sixth Amendment fair cross-section guarantee), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). *See also Georgia v. McCollum,* 505 U.S. 42, 62 n. 2, 112 S.Ct. 2348, 2360 n. 2, 120 L.Ed.2d 33, 53 n. 2 (1992) (Thomas, J., concurring) (stating that the majority's opinion, which extended *Batson* to a white defendant's peremptory challenges aimed at removing all African–Americans from the jury, would apply with equal force to the case of a minority defendant's exercise of peremptory challenges to remove white prospective jurors); 505 U.S. at 58, 112 S.Ct. at 2364, 120 L.Ed.2d at 58 (O'Connor, J., dissenting); *Edmonson v. Leesville Concrete Co., Inc., supra,* 500 U.S. at 644, 111 S.Ct. at 2095, 114 L.Ed.2d at 689 (Scalia, J., dissenting).

Although, in the instant criminal case, the defendant rather than the prosecution exercised peremptory strikes in a racially discriminatory manner, the Supreme Court has held

that *Batson's* holding applies to peremptory challenges exercised by the defendant in a criminal proceeding, *Georgia v. McCollum, supra,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33. Justice Blackmun, announcing the judgment of the Court in *Georgia v. McCollum,* explained (505 U.S. at 50, 112 S.Ct. at 2353–2354, 120 L.Ed.2d at 45):

> "Be it at the hand of the State or the defense, if a court allows jurors to be excluded because of group bias, it is a willing participant in a scheme that could undermine the very foundation of our system of justice—our citizens' confidence in it. Just as public confidence in criminal justice is undermined by a conviction in a trial where racial discrimination has occurred in jury selection, so is public confidence undermined where a defendant, assisted by racially discriminatory peremptory strikes, obtains an acquittal."

Furthermore, the excluded jurors' equal protection rights are affected regardless of who exercises the race-based peremptory challenges which result in their removal. *See Georgia v. McCollum, supra,* 505 U.S. at 48–49, 112 S.Ct. at 2353, 120 L.Ed.2d at 44; *Batson v. Kentucky, supra,* 476 U.S. at 87, 106 S.Ct. at 1718, 90 L.Ed.2d at 81; *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664, 666 (1880). *See also Carter v. Jury Commission of Greene County,* 396 U.S. 320, 329, 90 S.Ct. 518, 523–524, 24 L.Ed.2d 549, 557 (1970) ("People excluded from juries because of their race are as much aggrieved as those indicted and tried by juries chosen under a system of racial exclusion"). *Cf. Edmonson v. Leesville Concrete Co., supra,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (the *Batson* holding applies to peremptory challenges exercised by private parties in a civil case).

The Supreme Court's recent cases considering *Batson's* reach indicate the great importance that the Court places on the equal protection rights of the excluded jurors. *See, e.g., Georgia v. McCollum, supra,* 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33; Barbara A. Babcock, *A Place in the Palladium: Women's Rights and Jury Service,* 61 U.Cin.L.Rev. 1139, 1142 (1993) ("The goal of protecting those summoned to serve, once a background feature, has now moved to the center of the

analysis"). *See generally* Barbara D. Underwood, *Ending Discrimination in Jury Selection: Whose Right is it, Anyway?*, 92 Colum.L.Rev. 725 (1992). Very recently, Justice Blackmun, delivering the opinion of the Court in *J.E.B. v. Alabama ex rel. T.B., supra,* 114 S.Ct. at 1427–1428, 128 L.Ed.2d at 104–105, said:

> "In recent cases we have emphasized that individual jurors themselves have a right to nondiscriminatory jury selection procedures.... All persons, when granted the opportunity to serve on a jury, have the right not to be excluded summarily because of discriminatory and stereotypical presumptions that reflect and reinforce patterns of historical discrimination. Striking individual jurors on the assumption that they hold particular views simply because of their gender is 'practically a brand upon them, affixed by law, an assertion of their inferiority.' *Strauder v. West Virginia,* 100 U.S. 303, 308, 25 L.Ed. 664 (1880). It denigrates the dignity of the excluded juror.... The message it sends to all those in the courtroom, and all those who may later learn of the discriminatory acts, is that certain individuals, for no other reason than gender, are presumed unqualified by state actors to decide important questions upon which reasonable persons could disagree."

The Fourteenth Amendment's equal protection guarantee "cannot mean one thing when applied to one individual and something else when applied to a person of another color. If both are not accorded the same protection, then it is not equal." *Regents of University of California v. Bakke,* 438 U.S. 265, 289–290, 98 S.Ct. 2733, 2747–2748, 57 L.Ed.2d 750, 770–771 (1978).[3] Thus, over a hundred years ago, the Su-

---

**3.** "Although the Maryland Constitution does not contain an express guarantee of equal protection, it is well established that Article 24 embodies the same equal protection concepts found in the Fourteenth Amendment to the U.S. Constitution." *Verzi v. Baltimore County,* 333 Md. 411, 417, 635 A.2d 967, 969–970 (1994), and cases there cited. *See also Maryland Aggregates v. State,* 337 Md. 658, 671–672 n. 8, 655 A.2d 886, 893 n. 8 (1995). As such, we generally consider Supreme Court case law interpreting the Fourteenth Amendment as persuasive, al-

preme Court in *Strauder v. West Virginia, supra,* 100 U.S. at 308, 25 L.Ed at 666, observed that

> "[i]f in those States where the colored people constitute a majority of the entire population a law should be enacted excluding all white men from jury service, thus denying to them the privilege of participating equally with the blacks in the administration of justice, we apprehend no one would be heard to claim that it would not be a denial to white men of the equal protection of the laws."

The Supreme Court's opinion in *J.E.B. v. Alabama ex rel. T.B., supra,* 114 S.Ct. 1419, 128 L.Ed.2d 89, confirms that the *Batson* principle is not limited to the exclusion from juries of historically oppressed minorities. In *J.E.B.,* the Court considered whether the *Batson* principle could be invoked by a male defendant in a paternity and child support action, where the State had utilized its peremptory challenges to exclude all male prospective jurors. The basis for the Court's decision to apply the *Batson* principle to gender-based peremptory challenges was the heightened scrutiny of gender classifications under the Fourteenth Amendment's Equal Protection Clause.

Consequently, it is clear that "Blacks are not the only cognizable [racial] group to which *Batson* applies . . . ." *Mejia v. State,* 328 Md. 522, 530, 616 A.2d 356, 359 (1992). As we explained in *Tyler v. State,* 330 Md. 261, 266, 623 A.2d 648, 651 (1993):

> "*Batson* held that equal protection guarantees forbid the State in a criminal prosecution to use peremptory challenges to exclude potential jurors solely on account of their race or on the assumption that because of their race they will be unable to be impartial."

This protection applies equally to white persons and black persons. A peremptory challenge based on race cannot be

---

though not controlling, authority when interpreting Article 24. *Maryland Aggregates v. State, supra,* 337 Md. at 671–672 n. 8, 655 A.2d at 893 n. 8.

squared with equal protection principles. Thus, under both Article 24 of the Maryland Declaration of Rights and the Equal Protection Clause of the Fourteenth Amendment, peremptory challenges may not be exercised on the basis of race.

## IV.

Finally, Gilchrist argues that even if the *Batson* holding is applicable to peremptory challenges against white prospective jurors, the trial court in the instant case improperly applied *Batson*. He contends that the court failed to make a finding of fact that there existed a *prima facie* showing of purposeful racial discrimination before requiring defense counsel to submit race-neutral reasons for her challenges. Moreover, the defendant asserts that the trial court erred in finding a *Batson* violation because the court merely disagreed with defense counsel's reasons. Our examination of the trial court's application of *Batson* reveals no error.

The Supreme Court in *Batson* articulated a three-step process to be utilized by trial courts in assessing claims that peremptory challenges were being exercised in an impermissibly discriminatory manner. *See also Purkett v. Elem*, 115 S.Ct. 1769, 1770–1771, 131 L.Ed.2d 834, 839 (1995); *Whittlesey v. State*, 340 Md. 30, 46, 665 A.2d 223, 231 (1995).

First, the complaining party has the burden of making a *prima facie* showing that the other party has exercised its peremptory challenges on an impermissibly discriminatory basis, such as race or gender. *See Batson*, 476 U.S. at 93–97, 106 S.Ct. at 1721–1723, 90 L.Ed.2d at 85–88. Moreover, "[w]hether the requisite *prima facie* showing has been made is the trial judge's call...." *Mejia v. State, supra*, 328 Md. at 533, 616 A.2d at 361.

Second, once the trial court has determined that the party complaining about the use of the peremptory challenges has established a *prima facie* case, the burden shifts to the party exercising the peremptory challenges to rebut the *prima facie* case by offering race-neutral explanations for chal-

lenging the excluded jurors. The "explanation must be neutral, related to the case to be tried, clear and reasonably specific, and legitimate." *Stanley v. State*, 313 Md. 50, 78, 542 A.2d 1267, 1280 (1988). The reason offered need not rise to the level of a challenge for cause, *Batson v. Kentucky, supra*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. "At this step of the inquiry, the issue is the facial validity of the ... explanation." *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991). It is insufficient, however, for the party making the peremptory challenges to "merely deny[ ] that he had a discriminatory motive or ... merely affirm[ ] his good faith." *Purkett v. Elem, supra*, 115 S.Ct. at 1771, 131 L.Ed.2d at 840. *See also Chew v. State*, 317 Md. 233, 242, 562 A.2d 1270, 1277 (1989); *Tolbert v. State*, 315 Md. 13, 19, 553 A.2d 228, 230 (1989).

Finally, the trial court must "determine[ ] whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett v. Elem, supra*, 115 S.Ct. at 1771, 131 L.Ed.2d at 839; *Hernandez v. New York, supra*, 500 U.S. at 359, 111 S.Ct. at 1865, 114 L.Ed.2d at 405; *Batson v. Kentucky, supra*, 476 U.S. at 98, 106 S.Ct. at 1723, 90 L.Ed.2d at 88–89. This includes allowing the complaining party an opportunity to demonstrate that the reasons given for the peremptory challenges are pretextual or have a discriminatory impact. *Stanley v. State, supra*, 313 Md. at 61–62, 542 A.2d at 1272–1273. It is at this stage "that the persuasiveness of the justification becomes relevant...." *Purkett v. Elem, supra*, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

While the complaining party has the ultimate burden of proving unlawful discrimination, and therefore should be offered the opportunity to demonstrate that the reasons offered were merely pretextual, *Stanley v. State, supra*, 313 Md.

at 62, 542 A.2d at 1272–1273, the court may find that the reasons offered were pretexts for discrimination without such demonstration from the complainant. *See Purkett v. Elem, supra,* 115 S.Ct. at 1771, 131 L.Ed.2d at 839; *Hernandez v. New York, supra,* 500 U.S. at 363, 111 S.Ct. at 1868, 114 L.Ed.2d at 408.

These determinations made by the trial court are essentially factual, and therefore are "accorded great deference on appeal," *Hernandez v. New York, supra,* 500 U.S. at 364, 111 S.Ct. at 1868–1869, 114 L.Ed.2d at 408–409; *Batson v. Kentucky, supra,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *Chew v. State, supra,* 317 Md. at 245, 562 A.2d at 1276. An appellate court will not reverse a trial judge's determination as to the sufficiency of the reasons offered unless it is clearly erroneous. *Stanley v. State, supra,* 313 Md. at 84, 542 A.2d at 1283. *See also Purkett v. Elem, supra,* 115 S.Ct. at 1771, 131 L.Ed.2d at 840.

In the present case, Gilchrist argues that the trial court improperly shifted the burden of proof onto him without determining whether a *prima facie* case of racial discrimination had been made. The trial judge's statements at the time the *Batson* challenge was raised refutes this argument. When the State's Attorney indicated that the defendant's peremptory challenges were suspect under the principles articulated in *Batson,* the trial judge said to the defendant:

"All right. That's seven jurors you've struck. They were all white. Let's go through them one by one and give me the reasons you struck them."

Moreover, at a later colloquy between defense counsel and the court concerning counsel's explanation for striking prospective juror number 137, the court again said:

"The court is saying you have to, when you have struck seven jurors, potential jurors, . . . and they are all white and they all have different profiles, you're going to have to come up with a satisfactory explanation that persuades me that your reason for striking [these jurors] was not racial."

In sum, the trial judge's statements clearly disclose that the court found that the defendant's exercise of seven peremptory challenges, all of which were directed at white prospective jurors, was sufficient to establish a *prima facie* case of racial discrimination. The court was neither required to make more detailed findings nor to use the precise words *"prima facie."*

Moreover, we note that the issue of whether a *prima facie* case was properly made before the trial court has been treated as moot once the party making the peremptory challenges has offered explanations for the discriminatory challenges, and "the trial court has ruled on the ultimate question of intentional discrimination." *Hernandez v. New York, supra,* 500 U.S. at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405. *See, e.g., U.S. v. Perez,* 35 F.3d 632, 635 (1st Cir.1994); *U.S. v. Koon,* 34 F.3d 1416, 1440 (9th Cir.1994); *U.S. v. Pofahl,* 990 F.2d 1456, 1465 n. 4 (5th Cir.1993); *U.S. v. Johnson,* 941 F.2d 1102, 1108 (10th Cir.1991); *U.S. v. Forbes,* 816 F.2d 1006, 1010 (5th Cir.1987); *Safeway Stores, Inc. v. Buckmon,* 652 A.2d 597, 602 (D.C.App.1994).

Lastly, the trial court's findings, that the defendant's reasons for exercising his peremptory challenges were insufficient to overcome the *prima facie* case of racial discrimination, were not clearly erroneous. With respect to one of the challenged jurors, defense counsel could offer no reasons. As to three other jurors, the reasons given by defense counsel were that one looked like a former school teacher whom defense counsel did not like, one did not "relate to" anyone or anything in the courtroom, and one was dressed in a navy blazer and khaki slacks. Under all of the circumstances, the trial judge was warranted in holding that these reasons were pretextual.[4]

*JUDGMENT AFFIRMED, WITH COSTS.*

CHASANOW and BELL, JJ., concur.

---

**4.** Judge Chasanow in his concurring opinion asserts that the discussion of the waiver or abandonment issue in Part II of this opinion is

CHASANOW, Judge, concurring in opinion in which BELL Judge, joins.

I concur in the result and with part III of the majority opinion, but am dubious about the Court's analysis in part IV. Based on a recent Supreme Court decision, we should clarify the trial judge's role in ruling on claims of race or gender

"unnecessary," and he states that it is "unclear" why the majority deals with the issue. Judge Chasanow points out that the error-free selection of a new acceptable jury from a second jury pool rendered any errors in the earlier jury selection harmless or, in Judge Chasanow's terminology, "moot." Of course, the same comment could be made with regard to the discussion and resolution of the equal protection issue in Part III of this opinion and the discussion and resolution of the other issue raised by the defendant in Part IV of this opinion. The discussion of waiver and abandonment in Part II is no more "unnecessary" than the discussions in Parts III and IV. Nevertheless, Judge Chasanow agrees with the discussion of the equal protection issue in Part III, and he separately presents his views regarding the issue dealt with in Part IV.

The reasons for deciding the three issues raised by the parties in this case are not "unclear." As previously discussed, the defendant Gilchrist presented in a certiorari petition the two issues decided in Parts III and IV of this opinion. The State filed a cross-petition for a writ of certiorari, presenting *only* the waiver/abandonment issue. This Court could have denied the petitions on the ground that, if there were any errors in the initial jury selection process, the later error-free selection from a second pool of a jury acceptable to the defendant clearly rendered such earlier errors harmless. Nonetheless, the Court, believing that resolution of the three questions presented was important and in the public interest, granted both the defendant's petition and the State's cross-petition.

The State in the Court of Special Appeals had alternatively argued that any errors committed by the trial judge, in connection with the initial jury selection and discharge of the first jury pool, were harmless. The State's brief in this Court, however, did not include a harmless error argument. Analytically, the issue of whether error is prejudicial or harmless only arises if there is error. If an appellate court finds no error, there is no issue of harmless error. We have held that none of the errors claimed by Gilchrist was in fact committed by the trial judge; consequently the issue of prejudicial or harmless error does not logically arise.

We wish to emphasize, however, that if the State had raised the question of harmless error in its brief or if the Court should have decided to address the matter sua sponte, and if we had concluded that the trial judge had committed either of the errors claimed by the defendant, we would hold that the error-free selection of a second jury acceptable to the defendant rendered harmless any earlier error. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976).

motivated peremptory challenges. It is also unclear to me why the majority devotes page after page to discussing whether the defendant waived or abandoned his objections to the trial judge's rulings in the first aborted jury selection, and then in a footnote acknowledges that any error in the first aborted jury selection was harmless. Waiver is not a "threshold" inquiry; the defendant was not asked and should not be asked whether he waived any possible errors in his prior aborted jury selection. The defendant was entitled to a properly selected jury. After the first aborted jury selection, he got a properly selected jury with which he was satisfied. The majority's discussion of waiver in part II is, at best, unnecessary since any errors in the prior aborted jury selection are rendered moot by the second, error-free jury selection or, as the majority concedes in a footnote, are harmless. My primary concern, however, is the majority's discussion in part IV and the Court's failure to analyze the recent case decided by the Supreme Court after oral arguments before this Court in the instant case.

### PURKETT V. ELEM AND PART IV
### OF THE MAJORITY OPINION

Part IV of the Court's opinion is potentially confusing because it cites, seemingly with approval, several of this Court's prior cases which need to be reevaluated, if not overruled, in light of the Supreme Court's recent opinion in *Purkett v. Elem*, —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The majority may be perpetuating errors based on too literal a reading of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The same errors were made by several other courts, including the Eighth Circuit, as was pointed out by the Supreme Court in *Purkett, supra.* That case was cited by the majority but needs to be further analyzed.

In *Purkett,* the defendant was on trial for robbery in a Missouri court. During jury selection the prosecutor used two peremptory challenges to strike two African–American poten-

tial jurors.  The defense objected based on *Batson, supra,* and the prosecutor explained the reasons for the strikes as follows:

> " 'I struck [juror] number twenty-two because of his long hair.  He had long curly hair.  He had the longest hair of anybody on the panel by far.  He appeared to not be a good juror for that fact, the fact that he had long hair hanging down shoulder length, curly, unkempt hair.  Also, he had a mustache and a goatee type beard.  And juror number twenty-four also has a mustache and goatee type beard.  Those are the only two people on the jury . . . with facial hair. . . .  And I don't like the way they looked, with the way the hair is cut, both of them.  And the mustaches and the beards look suspicious to me.' "

*Purkett,* —— U.S. at ——, 115 S.Ct. at 1770, 131 L.Ed.2d at 838 (quoting App. to pet. for Cert. A–41).

The trial judge overruled the defendant's *Batson* objection and, after the defendant was convicted and appealed, that ruling was affirmed by the Missouri Court of Appeals.  The defendant then filed a petition for federal habeas corpus.  The district court concluded that the Missouri courts' determination that there had been no purposeful discrimination was a factual finding entitled to a presumption of correctness under 28 U.S.C. § 2254(d), and since that finding was supported in the record, the writ of habeas corpus was denied.

The Court of Appeals for the Eighth Circuit reversed and remanded with instructions to grant the writ.  That court held that "the prosecution must at least articulate some plausible race-neutral reason for believing those factors will somehow affect the person's ability to perform his or her duties as a juror." *Elem v. Purkett,* 25 F.3d 679, 683 (8th Cir.1994).  The Eighth Circuit concluded that the "prosecution's explanation for striking juror 22 . . . was pretextual" and that the trial judge had erred in not finding intentional discrimination. *Elem,* 25 F.3d at 684.

The Supreme Court reversed the Eighth Circuit in a per

curiam opinion apparently joined by seven Justices.[1] In that opinion the Supreme Court gave guidance to trial judges ruling on *Batson* challenges and for courts reviewing those rulings. The mistake made by the Eighth Circuit was explained by the Supreme Court as follows:

"The Court of Appeals erred by combining *Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected. It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge *may choose to disbelieve* a silly or superstitious reason at step 3 is quite different from saying that a trial judge *must terminate* the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges,' and that the reason must be 'related to the particular case to be tried.' This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a 'legitimate reason' is not a reason that makes

---

1. Justice Stevens filed a dissenting opinion in which Justice Breyer joined.

sense, but a reason that does not deny equal protection." (Citations omitted).

*Purkett,* —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839–40.

## THE THREE STEP PROCESS

There is a three-step process to be used by trial courts in determining whether peremptory challenges have been exercised in an impermissible discriminatory manner. In *Purkett,* the Supreme Court described the three-step process as follows:

> "Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination."

*Purkett,* —— U.S. at ——, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839. In some of the majority's language in the instant case, as well as in several of our prior cases, this Court may be making the same mistake as the Eighth Circuit by following a somewhat different three-step test.

*Purkett* held that a race and gender-neutral reason tendered following the finding of a prima facie case of discrimination in the exercise of peremptory challenges need not be persuasive or even plausible; it need only be truthful. Any proffered race and gender-neutral explanation should be accepted by the trial judge unless it is established by the objecting party that race or gender was a motivating factor for the challenge.

## STEP ONE—A PRIMA FACIE CASE

If a prima facie case of racial or gender discrimination is found in step one, then the Supreme Court indicates that the *burden of production* shifts to the proponent of the strike. It

is unclear whether the majority in the instant case has a different interpretation of the effect of this prima facie case.

In *Ferguson Trenching v. Kiehne*, 329 Md. 169, 182, 618 A.2d 735, 741 (1993), we recognized that the precise meaning of "prima facie evidence" is the subject of considerable disagreement. There are two competing views of the effect of a prima facie case. The competing views were described by one commentator as follows:

> "The term 'prima facie evidence' is sometimes used to mean 'compelling evidence,' i.e., evidence which shifts the burden of production to the opposing party, and thus to signify a true evidentiary rebuttable presumption. It is also used to mean 'sufficient evidence' to get to the jury, i.e., merely that the party with the burden of persuasion has met the burden of production and created an issue for the trier of fact by giving rise to a permissible inference." (Footnotes omitted).

LYNN MCLAIN, MARYLAND EVIDENCE § 301.4, at 230–31 (1987); *see also Grier v. Rosenberg*, 213 Md. 248, 252–55, 131 A.2d 737, 739–40 (1957).

The effect of a prima facie case of racial or gender discrimination is to shift the burden of production to the party exercising the strike to offer a race or gender-neutral explanation. Once an explanation is offered, the prima facie case dissipates, and although it may still remain in the case as the basis for an inference, it should not create a presumption that must be rebutted and should not shift the ultimate burden of proof (or ultimate burden of persuasion) to the party exercising the strike. The Supreme Court told us in *Purkett* that the ultimate burden of proving racial motive never shifts from the party objecting to a peremptory challenge. We should not cast the ultimate burden of *proof* (as opposed to the burden of articulating a race and gender-neutral reason) on the party exercising the strike. This subtle distinction is important for two reasons as we shall see in step three. It will be dispositive of the judge's decision if the judge is in equipoise in this most difficult fact-finding, and it may also subtly influence the determination of whether a prima facie case of discrimination

exists. Does the finding of a prima facie case merely require the striking party to articulate a race and gender-neutral reason in step two, or does it raise a presumption that in effect changes the burden of proof in step three? The Supreme Court in *Purkett* indicates the former, but our prior cases seem to indicate the latter.

*Purkett* holds that the finding of a prima facie case only shifts the burden to the striking party to produce a race and gender-neutral explanation and creates, at most, a permissible inference; it does not create a rebuttable presumption which has the effect of shifting the burden of proof or the ultimate burden of persuasion to the striking party.[2] This was, at least, implicit when the Supreme Court said:

> "Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination.... *If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.*
>
>    \*     \*     \*     \*     \*     \*
>
> [T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from the opponent of the strike. Cf. *St. Mary's Honor Center v. Hicks,* 509 U.S. ——, —— – ——, 113 S.Ct. 2742, 2748–2749, 125 L.Ed.2d 407[, 416] (1993)." (Emphasis added).

*Purkett,* —— U.S. at —— – ——, 115 S.Ct. at 1770–71, 131 L.Ed.2d at 839. This is made even more clear by the case cited immediately after that quotation. In *St. Mary's Honor Center, supra,* petitioner, a halfway house, employed respondent Hicks as a correctional officer. After Hicks was demoted and then fired, Hicks filed suit under Title VII of the Civil

---

This incidently is similar to Maryland Rule of Evidence 5–301(a). *See* Lynn McLain, Maryland Rules of Evidence § 2.301.1, at 85 (1994) stating: "Section (a) provides that in *civil cases, rebuttable evidentiary presumptions* ... will have the effect of shifting the burden of production of the evidence (but not the ultimate burden of persuasion) to the opposing party, to offer evidence tending to disprove the presumed fact."

Rights Act of 1964 claiming these actions were taken because of his race. The procedure in Title VII cases is similar to a *Batson* challenge. The United States District Court found that Hicks established a prima facie case of discrimination, but the halfway house offered two nondiscriminatory reasons for the firing. The district court found the reasons given by the halfway house were pretextual. The judge, nevertheless, ruled that Hicks failed to carry his ultimate burden of proof that the firing was racially motivated. Hicks appealed and the Court of Appeals for the Eighth Circuit reversed. *Hicks v. St. Mary's Honor Center,* 970 F.2d 487 (8th Cir.1992). The Eighth Circuit reasoned that, after proving a prima facie case, Hicks was entitled to judgment, as a matter of law, once he proved, and the judge found, that all of the halfway house's reasons were pretextual. The Supreme Court reversed the Eighth Circuit and held that the judge's rejection of the halfway house's reasons did not entitle Hicks to judgment as a matter of law. The Court reasoned that the finding of a prima facie case of discrimination raised a presumption of unlawful discrimination, but this presumption only placed the burden of production on the halfway house to produce nondiscriminatory reasons which, if believed, would support a finding that unlawful discrimination did not cause their actions. The prima facie case did not shift the ultimate burden of proof that remained on Hicks. Even if the reasons in step two were pretextual, Hicks still might not have met his burden of affirmatively proving discrimination in step three. The Court said:

> "Respondent does not challenge the District Court's finding that petitioners sustained their burden of production by introducing evidence of two legitimate, nondiscriminatory reasons for their actions: the severity and the accumulation of rules violations committed by respondent. Our cases make clear that at that point the shifted burden of production became irrelevant: *'If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted,'* and *'drops from the case.'* The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through

cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' and that race was. *He retains that 'ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination.'*

\*　　\*　　\*　　\*　　\*　　\*

The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. The defendant's 'production' (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' because of his race. The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is *required.*' But the Court of Appeals' holding that rejection of the defendant's proffered reasons *compels* judgment for the plaintiff disregards the fundamental principle of Rule 301 that a presumption does not shift the burden of proof, and ignores our repeated admonition that the Title VII plaintiff at all times bears the 'ultimate burden of persuasion.' " (Emphasis added and in original) (footnote omitted) (citations omitted).

*Hicks*, 509 U.S. at ——— ———, 113 S.Ct. at 2747–49, 125 L.Ed.2d at 416–19.

This Court has previously stated that prima facie evidence in the *Batson* context means " 'the establishment of a legally mandatory, rebuttable presumption.' " *Stanley v. State*, 313 Md. 50, 60, 542 A.2d 1267, 1272 (1988) (quoting *Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7., 67 L.Ed.2d 207, 216 n. 7 (1981)). In

*Gray v. State*, 317 Md. 250, 254, 562 A.2d 1278, 1280 (1989), we indicated "the trial judge [must] determine whether the defendant had made out a prima facie case of racial discrimination and, if so, whether the State had satisfactorily *rebutted the presumption.*" (Emphasis added). In *Chew v. State*, 317 Md. 233, 562 A.2d 1270 (1989), the Court elucidated that the burden of proof (or the burden of persuasion) shifts to the State to explain a prima facie discriminatory strike. We said:

> "The *State has the burden* of showing that 1) a reason other than the race of the juror did exist, *and* 2) *the reason* has some reasonable nexus to the case *and was in fact the motivating factor* in the exercise of the challenge." (Emphasis added).

*Chew*, 317 Md. at 247, 562 A.2d at 1277. The shift of the burden of proof emanates from our statement in *Stanley, supra,* that:

> "Although the phrase 'prima facie case' 'may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue,' in the Title VII context (and by implication, the *Batson* context), the phrase denotes 'the establishment of a legally mandatory rebuttable presumption.' *Burdine*, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7, 67 L.Ed.2d at 216 n. 7. Also see B. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 434 (1987) (citing *Burdine* for 'prima facie case')."

313 Md. at 60, 542 A.2d at 1272. In *Stanley,* the Court went on to explain the prosecution's burden on remand, since there was a prima facie case of discrimination in the use of peremptory challenges:

> "If the State can honestly come forth with neutral, nonracial reasons for each of its challenges to a black juror, and if the trial court, after examining the State's explanations within the entire context of the voir dire proceedings *finds all eight challenges have been satisfactorily justified* and there was no evidence of a discriminatory purpose, then

Stanley's convictions and sentences will stand affirmed." (Emphasis added) (footnote omitted).

313 Md. at 80, 542 A.2d at 1281.

In a more recent case, *Tolbert v. State*, 315 Md. 13, 553 A.2d 228 (1989), we affirmed the procedure set out in *Stanley*, *supra*, after the trial judge finds a prima facie case and made clear that the ultimate burden of persuasion is on the State:

" '[T]he State is to present, if it can, honest, neutral, nonracial reasons for the challenges of each black potential juror who was stricken. Any reasons presented must be legitimate, clear and reasonably specific, as general assertions of assumed group bias or broad denials of discriminatory motives will be insufficient to overcome the defendants' prima facie cases. The reasons must be tailored to the particular facts of the case that was tried and related to the individual traits of the jurors. The defendant will be afforded the opportunity to rebut any explanations put forth by the prosecutor and to expose any justification that on its face may appear racially neutral, but is in reality a sham or pretext. The trial court must then articulate a clear ruling detailing the basis on which it was made, and explaining whether the *established prima facie case of purposeful discrimination has been overcome by the State.*' " (Emphasis added).

315 Md. at 19, 553 A.2d at 230 (quoting *Stanley*, 313 Md. at 92, 542 A.2d at 1287–88).

It is time for us to clarify that a prima facie case of discrimination under *Batson* merely shifts the burden to the striking party to offer a race and gender-neutral reason for the peremptory challenge; it does not create a rebuttable presumption that, in effect, shifts the ultimate burden of proof. The step one determination of a prima facie case is not a high threshold. Its obvious rationale is that if a party gives the outward appearance of discriminating in the exercise of peremptory challenges then an explanation for the seemingly discriminatory strikes ought to be required. Parties should be cautious about exercising peremptory challenges in a way

that conveys the impression that they are discriminating on the basis of race or gender. Whenever they convey that impression, the price they pay is that they will be required to give a race and gender-neutral reason for all such strikes.

## STEP TWO—A RACE AND GENDER-NEUTRAL EXPLANATION

In step two, the Supreme Court has merely required the articulation of a race and gender-neutral reason for the strike even if "implausible or fantastic" and even if it is "silly or superstitious." Once that explanation is given, any presumption raised by the prima facie case dissipates to a mere permissible inference, and we move to step three. In the instant case, the majority characterizes the second step of the trial court's analysis as follows:

> "[O]nce the trial court has determined that the party complaining about the use of the peremptory challenges has established a *prima facie* case, the burden shifts to the party exercising the peremptory challenges to rebut the *prima facie* case by offering race-neutral explanations for challenging the excluded jurors. The 'explanation must be neutral, *related to the case to be tried, clear and reasonably specific, and legitimate.'* The reason offered need not rise to the level of a challenge for cause. 'At this step of the inquiry, the issue is the facial validity of the ... explanation.'" (Citations omitted).

340 Md. at 625–626, 667 A.2d at 885. The majority's second step analysis is taken from several of our prior cases including *Chew, supra; Tolbert, supra; Stanley, supra.* For example in *Tolbert,* we reversed a trial judge because "[t]he State did not produce *satisfactory* nondiscriminatory reasons for every peremptory challenge exercised to exclude a black juror. The reasons given by the State were not *satisfactorily* neutral." 315 Md. at 24, 553 A.2d at 233 (emphasis added). In that case, we also quoted with approval from *Stanley* as follows:

> " 'A new trial will be required if the State cannot produce satisfactory nondiscriminatory reasons for every perempto-

ry challenge exercised to exclude a black juror. A new trial will be ordered if any reasons given by the State are perceived by the trial court as only pretext and thus not satisfactorily racially neutral. A new trial will be mandated if any one of the peremptory challenges to black jurors was exercised with a discriminatory purpose, as the State will not be allowed "one free discriminatory strike." *Any* violation requires a new trial.' "

*Tolbert*, 315 Md. at 19, 553 A.2d at 230 (quoting *Stanley*, 313 Md. at 92–93, 542 A.2d at 1288).

Step three is the only step where the persuasiveness of the reasons becomes relevant. This distinction is very important because, as will be explained, step three involves a fact finding by the trial judge and is subject to only limited appellate review. The error in mixing up step two and step three is evidenced in *Chew, supra,* where the reason given by a prosecutor for striking a black juror was that the juror appeared " 'stone faced,' and unsmiling," and "it appeared to the prosecutors that [the juror] preferred to be anywhere else but on that jury." 317 Md. at 247, 562 A.2d at 1277. This Court held that "the *trial judge's ruling* on the acceptability of the prosecutors' reason for the strike *cannot be accepted.*" *Chew,* 317 Md. at 246, 562 A.2d at 1276 (emphasis added). *Tolbert, supra,* also reversed the trial judge because:

"The explanation advanced by the prosecutor simply does not present neutral, nonracial reasons for striking either of these two individuals. In relation to the individual traits of those two prospective jurors, the *reasons lack the legitimacy, clarity, and reasonable specificity* called for by *Batson.* The reasons simply do not hold water in the circumstances."

315 Md. at 23–24, 553 A.2d at 232.

This analysis is similar to what the Supreme Court condemned in *Purkett, supra.* There is no legal or factual issue in step two except whether any reasons for the strike are proffered and whether the proffered reasons are race and gender neutral. There is no need to mandate "satisfactory" or "clear and reasonably specific, and legitimate" reasons, or any

preapproved, appropriate, or politically correct reasons. As long as the reasons given do not on their face deny the juror equal protection, this step is satisfied even if the reasons are implausible or unpersuasive. In *Purkett*, the Supreme Court stated:

> "The second step of this process does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered *will be deemed race neutral.*'
>
> \* \* \* \* \* \*
>
> The prosecutor's proffered explanation in this case—that he struck juror number 22 because he had long, unkempt hair, a mustache, and a beard—is race-neutral and satisfies the prosecution's step 2 burden of articulating a nondiscriminatory reason for the strike. 'The wearing of beards is not a characteristic that is peculiar to any race.' And neither is the growing of long, unkempt hair." (Emphasis added) (citations omitted).

—— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839 (quoting *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 406 (1991) and *Equal Employment Opportunity v. Greyhound Lines*, 635 F.2d 188, 190 n. 3 (3rd Cir.1980)). *See also Jones v. Plaster*, 57 F.3d 417 (4th Cir.1995).

> "Once a prima facie case of discrimination is established, the burden shifts to the party whose conduct is challenged to come forward with a nondiscriminatory explanation for the use of the challenge. To satisfy this burden, the party need offer only a legitimate reason for exercising the strike, *i.e.*, one that does not deny equal protection; the reason need not be worthy of belief or related to the issues to be tried or to the prospective juror's ability to provide acceptable jury service." (Citations omitted).

*Jones*, 57 F.3d at 420. The Supreme Court was emphatic that "[t]he second step of this process does not demand an explana-

tion that is persuasive, or even plausible." *Purkett*, —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. This Court should make it clear that we will no longer interpose any minimum legal sufficiency requirement for race and gender-neutral explanations. The majority should no longer question the legal sufficiency of the reasons to overcome the step one prima facie case. Any race and gender-neutral reason proffered, even if it is "silly" or "superstitious" or even if it is an explanation that is not "persuasive, or even plausible," should be sufficient. *Purkett*, —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. Step two is satisfied if the explanation is race and gender neutral no matter how far fetched.

### STEP THREE—FACT FINDING AND APPELLATE REVIEW

Step three involves fact finding, *i.e.*, "whether the opponent of the strike has proved purposeful racial discrimination." *Purkett*, —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. Appellate review of this step is the same as appellate review of any other fact finding by a trial judge and, under Maryland Rule 8–131(c), should not be set aside unless clearly erroneous. For the reasons indicated in the discussion in step one, *supra*, it seems clear from *Purkett* that although the step one prima facie finding still remains in step three as a permissible inference, it does not shift the burden of proof to the striking party by creating a presumption that must be rebutted. In other words, if the judge is in equipoise, the objection to the strike must be overruled.

In step three the judge is asked by the objecting party to deprive a litigant of the right to peremptorily challenge a juror. This is a very important right conferred by the legislature and this Court's rules. The importance of peremptory challenges is well recognized, and the impairment of the right to exercise allotted peremptory challenges is reversible error. In *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court stated:

"The persistence of peremptories and their extensive use demonstrate the long and widely held belief that perempto-

ry challenge is a necessary part of trial by jury. *See Lewis v. United States*, 146 U.S. 370, 376[, 13 S.Ct. 136, 138, 36 L.Ed. 1011, 1014 (1892) ].... The denial or impairment of the right is reversible error without a showing of prejudice.... [citations omitted] ... '[F]or it is, as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose.' *Lewis v. United States* [, 146 U.S. at 378, 13 S.Ct. at 139, 36 L.Ed. at 1014]."

380 U.S. at 219, 85 S.Ct. at 835, 13 L.Ed.2d at 771. The only limitation of the free exercise of the allotted number of peremptory challenges is that they can not be used to discriminate on the basis of race or gender. Depriving a party of the right to exercise a peremptory challenge should require that discrimination be established, not merely inferred or assumed, solely because of what may be a purely accidental and random disproportionate striking of one race or gender.

A finding of a prima facie case in step one requires the striking party to give a race and gender-neutral explanation for the strike in step two. That prima facie finding should not be expanded to any assumption in step three that the striking party was untruthful in its step two race and gender-neutral explanation. The burden of proof remains on the objecting party. Disallowing a peremptory challenge should require an affirmative finding of discrimination, not simply a default finding where the judge is in equipoise. Every trial lawyer knows there are many cases where a proper jury selection process can, on occasion, disproportionately eliminate one race or gender in a jury pool. Properly exercised peremptory challenges may also, on occasion, disproportionately exclude one race or gender. Judges should require an explanation when there is disproportionate exclusion of a race or gender but they should not presume the explanation is untruthful if they are unable to make a decision one way or the other.

*Purkett* tells us that judges should only deprive a party of the right to freely exercise a peremptory challenge when it is *proven* that the challenge was used to improperly discriminate. Disallowing a peremptory challenge and calling back a

stricken juror, or aborting a jury selection proceeding, is an extreme remedy that requires an affirmative showing of discrimination. Disproportionately exercising peremptory challenges against a race or gender creates the need for an explanation; it does not shift the ultimate burden of proof to the striking party.

## THE RULINGS IN THE INSTANT CASE

The jury selection in the instant case occurred prior to the *Purkett* decision. It is apparent from her rulings that Judge Heller very carefully read and painstakingly applied prior holdings of this Court. These holdings were superseded by *Purkett.* Although the issue is moot in the instant case, if we follow *Purkett,* it is questionable whether Judge Heller was correct in ruling that the defendant had improperly exercised some of his peremptory challenges. After finding a prima facie case of discrimination, Judge Heller seemed to focus on the legal sufficiency of defense counsel's explanations, rather than their truthfulness. She disallowed strikes on the basis that they were not "satisfactory explanation[s]" or "acceptable reason[s]." Based on our prior cases, the trial judge also seemed to place the ultimate burden of proof on the defendant to show that he properly exercised his peremptory challenges. She told defense counsel "you're going to have to come up with a satisfactory explanation *that persuades me* that your reason for striking him was not racial. I mean, that's what the case law is saying." (Emphasis added). Defense counsel then pointed out that there were several whites that were not struck, and also that "the majority of the jurors that were presented to me were, in fact, white. There have been very few black jurors that have been called up." In explaining why she was finding against the defendant, the judge, in accord with our prior cases, seemed to combine step two and step three, and focused only on the adequacy of the reasons, not their truthfulness. The trial judge also placed the ultimate burden of persuasion on the striking party when she concluded that:

"They're not adequate reasons. *I'm not saying that I'm finding that the public defender has struck these individuals for race or race alone.* She did give satisfactory explanations for Juror Number 9 and Juror Number 137 who are victims.

On the other hand, the other people she's struck, all of them are white, none of them have particular profiles. She hasn't seemed to come up with adequate answers." (Emphasis added).

If the trial judge was not finding or saying "that the public defender has struck these individuals for race or race alone" then she should not disallow the strikes. *Purkett* tells us that it is the truthfulness of the explanation, not the legal sufficiency of the explanation, that is relevant. In reviewing the trial judge's findings, the majority neither questions the trial judge's apparent focus on the reasons for the strike rather than the truthfulness of those reasons, nor questions her apparent placing of the ultimate burden on the striking party. The mistake the trial judge and this Court seem to make is the same mistake the Supreme Court criticized the Eighth Circuit for making when it said:

"[I]ts whole focus was upon the *reasonableness* of the asserted nonracial motive (which it thought required by step 2) rather than the *genuineness* of the motive. It gave no proper basis for overturning the state court's finding of no racial motive, a finding which turned primarily on an assessment of credibility." (Citations omitted).

*Purkett,* —— U.S. at ———–——, 115 S.Ct. at 1771–72, 131 L.Ed.2d at 840.

The majority further confuses these issues when it states: "the trial court's findings, that the defendant's reasons for exercising his peremptory challenges were insufficient *to overcome the prima facie case of racial discrimination,* were not clearly erroneous." 340 Md. at 628, 667 A.2d at 886–887. As was also discussed in step one, that statement is derived from several of our prior cases that held that a prima facie case of discrimination raises a presumption which, in effect, shifts the

ultimate burden of persuasion to the striking party to overcome that presumption. These cases should be disavowed in light of *Purkett.*[3]

## CONCLUSION

A party claiming that a peremptory challenge discriminates against a potential juror because of race or gender has the burden of proof, but may raise a permissible inference by making out a prima facie case of discrimination in step one. If the judge finds a prima facie case of discrimination, then in step two the party exercising the strike must offer a race and gender-neutral explanation. In step three, the trial judge must weigh the step two explanation against any indications of discrimination including the step one prima facie case, but the burden of proof remains on the party objecting to the strike. The relevant considerations include such factors as any racial implications in the case and the motive to discriminate in jury selection, the strength of the prima facie case of discriminatory strikes, the number of prima facie discriminatory strikes, the persuasiveness of the explanation offered for other prima

---

**3.** The majority does *sub-silentio* overrule some of our prior holdings where we indicated an erroneous standard of review for rulings on allegedly discriminatory peremptory challenges. For example in *Chew v. State,* 317 Md. 233, 562 A.2d 1270 (1989), we said:

"[A]n appellate court will give great deference to the first level findings of fact made by a trial judge, but having done so, will make an independent constitutional appraisal concerning the existence of neutral, non-racial reasons for the striking of a juror."

317 Md. at 245, 562 A.2d at 1276. In the instant case, the majority quite properly acknowledges that the standard of review is much more limited and states:

"These determinations made by the trial court are essentially factual, and therefore are 'accorded great deference on appeal,' *Hernandez v. New York, supra,* 500 U.S. at 364, 111 S.Ct. at 1868–1869, 114 L.Ed.2d at 408–409; *Batson v. Kentucky, supra,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21; *Chew v. State, supra,* 317 Md. at 245, 562 A.2d at 1276. An appellate court will not reverse a trial judge's determination as to the sufficiency of the reasons offered unless it is clearly erroneous. *Stanley v. State, supra,* 313 Md. at 84, 542 A.2d at 1283. *See also Purkett v. Elem, supra,* —— U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 840."

340 Md. at 627, 667 A.2d at 886 (1995).

facie discriminatory strikes.  In addition, the judge should consider any other factors relevant to the factual determination of whether the proffered race and gender-neutral explanation is genuine and truthful or whether the explanation is merely the articulated excuse for a strike that is motivated by improper race or gender considerations.  Any nondiscriminatory motive, even if only a hunch based on appearance, may be adequate if believed by the trial judge to be the genuine nondiscriminatory reason and not just an excuse.

Trial judges are going to be hesitant to disbelieve race and gender-neutral explanations offered by attorneys under an ethical obligation to be candid with the court.  Where, however, there emerges a pattern of race or gender strikes, particularly in a case where there could be racial or gender considerations, judges should not be gullible and must not permit the violation of the equal protection rights of prospective jurors. They must carefully and conscientiously weigh whether race or gender was even a partial conscious or subconscious motive for a peremptory challenge.  If a judge believes race or gender is even a partial motive, the prospective juror is denied equal protection.  When the decision is made and the judge provides reasons for the decision, those fact findings and reasons should be given great deference by appellate courts and reversed only if clearly erroneous.

Judge Bell has authorized me to state that he joins in the views expressed in this concurring opinion.