42 A.3d 27

STATE of Maryland

v.

Reginald STRINGFELLOW.

No. 62, Sept. Term, 2011.

Court of Appeals of Maryland.

April 23, 2012.

462

**464**

―――――――――――――

Daniel J. Jawor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Piedad Gomez, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and RAYMOND G. THIEME, JR. (Retired, specially assigned), JJ.

HARRELL, J.

String theory is a scientific framework that describes the smallest, most basic particles—those building blocks of the universe so small they cannot be comprised of other particles—as indistinguishable segments of string. These infinitesimally small particles vibrate like the plucked strings of a subatomic guitar. How they vibrate determines whether they are leptons or quarks, which form atoms, which form elements, and so forth. Reginald Stringfellow's theory, on the other hand, hypothecates that his objection to a voir dire question proposed by the prosecutor and given by the trial judge during jury selection was like a string, vibrating well beyond the empaneling of the jury. Petitioner, the State, and Respondent, Mr. Stringfellow (Stringfellow), disagree whether Stringfellow's objection was a lepton or a quark. That is, the State argues that Stringfellow's unsuccessful objection to the question went to the composition of the jury, which objection he waived (for purposes of appellate review) by accepting, without qualification or reservation, the jury chosen pursuant to the questioning. Stringfellow counters that the nature of his objection was incidental to the composition of the jury and, notwithstanding his acceptance of the jury, his objection is preserved for appellate consideration.

■ Our case law instructs that an overruled objection to a voir dire question, where the nature of the objection was directed to the composition of the jury, is waived when the objecting party accepts thereafter the jury, without qualification. Here, Stringfellow objected timely to the trial judge asking the venire about their views regarding whether the State must demonstrate that it employed certain scientific investigative techniques and/or scientific evidence before any member of the venire could convict him. Stringfellow argued that the question would prejudice the venire against him and diminish the State's burden of proof. We conclude that Stringfellow's objection went to the composition of the jury. Thus, when he accepted (after his objection was overruled and the question propounded) the jury, without qualification, he waived any future opportunity to complain on appeal about the objected-to question and its potential effect. Even assuming that the objection was not waived, the asking of the voir dire question proved harmless error on this record.

## I. FACTS AND PROCEDURAL BACKGROUND

The State's evidence at trial told the following tale. On the evening of 21 November 2009, plainclothes Baltimore City police officers, in an unmarked vehicle, patrolled the 5300 block of Beaufort Avenue in Baltimore City. They observed a person, later identified as Stringfellow, holding a handgun. They drove toward him. When Stringfellow noticed the approaching vehicle, he dropped the handgun and ran off. The officers caught Stringfellow, arrested him, and recovered the handgun. The State charged Stringfellow with two crimes: (1) possessing a regulated firearm after having been convicted of a disqualifying crime, and (2) wearing, carrying, or transporting a handgun.

On the first day of what was to be Stringfellow's jury trial in the Circuit Court for Baltimore City, the judge considered voir dire questions proposed by the parties. Among the State's proposals was its question 14, which inquired whether any member of the venire believed that the State must use certain scientific evidence and/or scientific investigative tech-

niques before a potential juror could find the defendant guilty beyond a reasonable doubt. Initially, the judge seemed disinclined to ask question 14, prompting the following exchanges:

> **PROSECUTOR:** Then my Question 14.
>
> **COURT:** Yeah. You always ask me for that and I always tell you no, then I always give it to you. So I'll probably do the same thing this time. I'll give it to you in voir dire. I won't give it to you in jury instructions.
>
> **DEFENSE COUNSEL:** I would object to it being asked in voir dire.
>
> **COURT:** Of course you would. I understand, but it's a fair question to ask.
>
> . . . .
>
> **COURT:** We'll take it—here's what we're going to do. I'll give the instruction over the objection of the defense and we'll see where we go with it because it may not become relevant at all.
>
> But because the question reads[, "D]oes any member of the panel believe the [S]tate is required to utilize specific investigative techniques such as [fingerprints"]—we won't say DNA because it's not relevant here . . . . ["]in order for the defendant to be found guilty beyond a reasonable doubt.["] If a juror believes that they are required to do that, we know that it is not the law. And if that's their belief then that is something both sides have a right to know.

The judge propounded ultimately the State's question 14 as "Does any member of the panel believe that the State is required to utilize specific investigative or scientific techniques such as fingerprint examination in order for the defendant to be found guilty beyond a reasonable doubt?" No response was recorded from anyone in the venire.

Immediately after posing State question 14, the judge continued:

> If selected as a juror, you're required to render a fair and impartial verdict based upon the evidence presented in the courtroom and the law as I describe it to you in my

instructions at the end of this case. Is there any member of the jury panel who feels as if as a matter of your own personal conscience you disagreed with the law, you would disregard the law and instead follow your conscience?

Four venire members responded affirmatively to this query; none of them served on the jury. After completion of voir dire and jury selection, and before the judge's courtroom clerk swore the jury, the clerk asked the parties if the jury was acceptable:

**CLERK:** Jury panel acceptable to the State?

**PROSECUTOR:** Yes. The jury panel is acceptable to the State.

**CLERK:** Acceptable to the defense?

**DEFENSE COUNSEL:** Yes, it is.

The judge observed, "The panel is acceptable to both sides. That's fine."

As part of his defense, Stringfellow highlighted that the police officers failed to have examined the confiscated handgun for latent fingerprints. In an effort to suggest that it would have been relatively simple for the arresting officers to request a fingerprint analysis of the weapon, Stringfellow offered in evidence (and the judge admitted over the State's objection) a blank police fingerprint-analysis-request form, which required a box to be checkmarked to request a fingerprint analysis of an item of evidence. In the absence of such an examination (and notwithstanding the eyewitness testimony of the officers who saw Stringfellow holding the handgun on 21 November 2009 on Beaufort Avenue), Stringfellow urged that the State failed to link him conclusively to the handgun. He reiterated the lack-of-fingerprint-evidence argument, over the prosecutor's objection, during closing argument.

The judge gave several final jury instructions at the close of all the evidence. Among them, he said, "I may have commented on evidence or asked a question of a witness. You should not draw any inferences or conclusions from my comments or questions either as to the merits of the case or as to my views regarding the witness." He stated also that the

State had the burden to prove, beyond a reasonable doubt, that Stringfellow was guilty. "However," the judge cautioned, "if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty."

The jury convicted Stringfellow on both counts.[1] Stringfellow appealed to the Court of Special Appeals. He argued that the propounding of the State's voir dire question 14 prejudiced the jurors against him by imputing his guilt, devaluing fingerprint evidence, and lowering the State's burden of proof. *Stringfellow v. State*, 199 Md.App. 141, 146, 20 A.3d 825, 829 (2011). The State countered that Stringfellow failed to preserve for appellate review the bases of his voir dire objection by accepting, without qualification, the empaneled jury. *Stringfellow*, 199 Md.App. at 146 n. 1, 20 A.3d at 829 n. 1. In rejecting the State's waiver argument, the panel of the Court of Special Appeals agreed with Stringfellow that the nature of his objection did not require renewal of his objection (or otherwise qualify his acceptance of the jury) contemporaneously with the trial court empaneling the jury. *Stringfellow*, 199 Md.App. at 146 n. 1, 20 A.3d at 829 n. 1. On the merits of Stringfellow's contentions regarding the error of giving the State's voir dire question 14, the panel concluded that the question deprived Stringfellow of a fair and impartial jury. The intermediate appellate court concluded also that propounding question 14 was not harmless error because, given its precedent conclusion that the jury was prejudiced, the error influenced improperly the verdict. *Stringfellow*, 199 Md.App. at 154, 20 A.3d at 833. The panel reversed and remanded the case to the Circuit Court for a new trial. *Stringfellow*, 199 Md.App. at 151, 20 A.3d at 831.

The State filed timely a petition for a writ of certiorari. We granted the State's petition, *State v. Stringfellow*, 421 Md. 557, 28 A.3d 644 (2011), to consider two questions:

---

1. There were no jury notes. The jury deliberated for approximately one hour.

Did Stringfellow waive his prior objection to the voir dire question, asked to the venire, when he accepted the empaneled jury without qualification? [2]

If Stringfellow did not waive his prior objection and assuming also that the judge erred in asking the voir dire question, was the error harmless beyond a reasonable doubt under the circumstances of the case? [3]

We conclude that, given the nature and objective of Stringfellow's objection to the voir dire question, he failed to preserve for appellate review the grounds of the objection when he accepted the empaneled jury, without qualification or reservation. Even had Stringfellow preserved his objection, and assuming that propounding the pre-emptive "anti-CSI effect" question was error, the error was harmless beyond a reasonable doubt, given the record of his trial.

## II. DISCUSSION

### A. Waiver

■■■■■ Generally, a party waives his or her voir dire objection going to the inclusion or exclusion of a prospective juror (or jurors) or the entire venire if the objecting party accepts unqualifiedly the jury panel (thus seated) as satisfactory at the conclusion of the jury-selection process. *Gilchrist v. State,* 340 Md. 606, 617, 667 A.2d 876, 881 (1995) (citing, among other cases, *Mills v. State,* 310 Md. 33, 40, 527 A.2d 3, 6 (1987)). Conversely, a voir dire objection that is incidental to the inclusion/exclusion of a prospective juror or the venire is not waived by accepting a jury panel at the conclusion of the jury-selection process; rather, such an objection is preserved for review on direct appeal. *Gilchrist,* 340 Md. at 618, 667 A.2d at

---

**2.** In its brief, the State framed this question, "By accepting the jury panel without qualifications, did Stringfellow waive his appellate complaint that a voir dire question biased the entire jury against him?"

**3.** In its brief, the State framed this question, "Even if the trial court erred, is the error harmless beyond a reasonable doubt in light of other contemporaneous voir dire, the presentation of evidence, the final instruction of the trial court, and the arguments of counsel?"

882 (citing *Couser v. State*, 282 Md. 125, 130, 383 A.2d 389, 392 (1978)).

 Objections related to the inclusion/exclusion of prospective jurors are treated differently for preservation purposes because accepting the empaneled jury, without qualification or reservation, "is directly inconsistent with [the] earlier complaint [about the jury]," which "the party is clearly waiving or abandoning." *Gilchrist*, 340 Md. at 618, 667 A.2d at 881-82. Objections related indirectly to the inclusion/exclusion of prospective jurors are not deemed likewise inconsistent and are deemed preserved for appellate review. Although the difference between the two categories of objections may appear slight, it is important in light of the waiver implications.

We have concluded that the following types of voir dire objections were aimed directly at the inclusion/exclusion of a prospective juror or the venire and were waived when the objecting party accepted the jury without contemporaneous renewal of his or her complaint: (1) an objection to a judge's refusal to strike prospective jurors for cause, *Mills*, 310 Md. at 39-40, 527 A.2d at 6; (2) an objection to the exclusion of a juror because of his beliefs about capital punishment, *Foster v. State*, 304 Md. 439, 450-51, 499 A.2d 1236, 1241-42 (1985); (3) a defendant who failed to object to unacceptable venire members after using all of his peremptory strikes, *White v. State*, 300 Md. 719, 729-30, 481 A.2d 201, 205-06 (1984); (4) an objection to a venire not selected randomly from registered-voter lists, *Glover v. State*, 273 Md. 448, 451-52, 330 A.2d 201, 203-04 (1975); and, (5) an objection to prejudicial remarks made by the prosecutor in earshot of the venire, *Neusbaum v. State*, 156 Md. 149, 162-63, 143 A. 872, 878 (1928).

On the other hand, the following objections were deemed incidental to the inclusion/exclusion of prospective jurors and, therefore, not waived by the objecting party's unqualified acceptance thereafter of the jury panel: (1) an objection to a prior jury panel, where the judge excused that prior jury panel and called a second one from which was selected the jury that convicted the defendant, *Gilchrist*, 340 Md. at 617-

18, 667 A.2d at 881–82; (2) an objection, made during voir dire, to being refused permission to inspect a prosecutor's notes on prospective jury members, *Couser*, 282 Md. at 129, 383 A.2d at 391–92; and, (3) an objection to a judge refusing to ask a proposed voir dire question, *Marquardt v. State*, 164 Md.App. 95, 142–43, 882 A.2d 900, 927–28 (2005).

Stringfellow's objection—that the State's voir dire question, if asked, would bias the venire members against him and diminish the State's burden of proof—tracks most closely in purpose and design the objections in *Glover* and *Neusbaum*. Stringfellow's objection implied necessarily that the venire members would be incapable of sitting on the jury and evaluating the evidence (or lack of certain evidence) fairly and objectively because the pertinent voir dire question "poisoned" the venire by implying, among other things, that Stringfellow was guilty. In *Neusbaum*, the prosecutor described, in the presence of the venire, the defendant as a hit-and-run driver. 156 Md. at 153, 143 A. at 874. Neusbaum asked for the venire to be replaced because the remark prejudiced the venire against him. *Neusbaum*, 156 Md. at 153, 143 A. at 874. In *Glover*, the sheriff collected 25 supplemental venire members from the area surrounding the courthouse because of an insufficient initial jury pool. 273 Md. at 449, 330 A.2d at 202. Glover argued that the additional venire members were unsuitable to sit on the jury because they were not selected randomly from registered-voter lists, in accordance with then Article 51, § 9(e) of the Maryland Code (1957, 1972 Repl.Vol., 1973 Cum.Supp.). *Glover*, 273 Md. at 451, 330 A.2d at 203.

Like the objections in *Neusbaum* and *Glover*, Stringfellow's objection asserted that the venire members, if the relevant question was posed, would be unfit to sit as jurors in his trial; therefore, his objection went to the inclusion of prospective jurors on the jury selected ultimately. Objections of this nature are waived if not preserved appropriately at the time the trial court empanels the jury. Here, Stringfellow accepted, without reservation or qualification, the jury. Consequently, Stringfellow failed to preserve his voir dire objection for future consideration on appeal.

Our conclusion disapproves necessarily an aspect of *McFadden v. State*, 197 Md.App. 238, 253, 13 A.3d 68, 76–78 (2011), a case, similar factually to the present one, that the Court of Special Appeals relied upon to reject the State's waiver argument. The jointly-tried defendants in *McFadden* complained prefatorily that a proposed voir dire question, ultimately propounded, suggested that they were guilty. 197 Md.App. at 248, 13 A.3d at 74. They noted timely their objection, but later accepted the jury without qualification. *McFadden*, 197 Md.App. at 250, 13 A.3d at 75. The *McFadden* court concluded that the defendants preserved their voir dire objection nonetheless for two reasons. First, defense counsel, in not renewing their objection at the time they accepted the jury, "was merely obedient" to the court's prior overruling of their objection. *McFadden*, 197 Md.App. at 253, 13 A.3d at 77. Obeisance to the trial court's ruling on the objection, however, should not be the crux of such an analysis. Second, the *McFadden* court used as authority for its position *Fowlkes v. State*, 117 Md.App. 573, 701 A.2d 862 (1997). *Fowlkes* concluded that an objection to the judge's refusal to propound a requested voir dire question was incidental to the composition of the jury. The objection was preserved therefore for appellate review, despite the objecting party's unqualified acceptance of the jury.

*Fowlkes*, however, is inapposite. The propounded, purportedly prejudicial, voir dire question in *McFadden* (like the subject voir dire question in the present case) is not analogous to the unpropounded voir dire question in *Fowlkes*. The purpose of voir dire, which means literally "to say the truth," is to "ensure a fair and impartial jury" and to filter out prejudiced venire persons. *Charles & Drake v. State*, 414 Md. 726, 733, 997 A.2d 154, 158 (2010) (citations omitted). A prejudicial voir dire question, when propounded, may inject the very prejudice that voir dire attempts to filter out. *Charles & Drake*, 414 Md. at 739, 997 A.2d at 162. Therefore, an objection to a propounded, purportedly prejudicial, voir dire question relates directly to the composition of the jury. An unpropounded voir dire question, like a defused bomb,

cannot likewise prejudice the venire. Thus, the two types of objections are distinct, and *Fowlkes* does not support the conclusion in *McFadden* that both types are preserved for appellate consideration without renewed objection when the jury is empaneled.

Stringfellow argues also that the trial court must offer to call a new venire, and have the offer rejected, before the objecting party will be deemed to have waived a previous objection that relates directly to the composition of the jury. In *Neusbaum,* the judge offered to call a new venire after the defendant objected to the present venire, complaining that the present venire was prejudiced. Neusbaum declined the offer and, on appeal, we deemed his objection waived. We disagree with Stringfellow's interpretation of *Neusbaum.* Here, the courtroom clerk asked Stringfellow, in the routine manner, "Is the jury acceptable to the defense?," but did not offer to call a new venire. The courtroom clerk's query to Stringfellow whether the jury was acceptable was a sufficient invitation or incentive for Stringfellow to renew his objection to the seated jury or to qualify his acceptance.

■ Finally, Stringfellow imagines that requiring an aggrieved party to reiterate an objection to the potential 12–member jury (and any alternates), after jury selection, "subverts the orderly jury selection process." By comparison, the Courts and Judicial Proceeding Article and the Maryland Rules permit a party to challenge an improper juror or jury array until the trial court receives evidence. *See* Md.Code Ann., Cts. & Jud. Proc. § 8–409(b)(1) (LexisNexis 2006); Md. Rule 4–312(a)(3), (d)(2). Moreover, a party can object to racially-based juror challenges until trial commences. *United States v. Clark,* 409 F.3d 1039, 1043 (8th Cir.2005) (quoting *United States v. Parham,* 16 F.3d 844, 847 (8th Cir.1994)). Stringfellow has not persuaded us that our conclusion in this case subverts the orderly jury-selection process.

## B. Harmless Error

■ Even assuming, for the sake of argument, that Stringfellow had not waived his objection to the voir dire question

and that it was error for the trial judged to pose the pertinent question (*See Stabb v. State,* 423 Md. 454, 31 A.3d 922 (2011) and *Atkins v. State,* 421 Md. 434, 26 A.3d 979 (2011)),[4] the result here would be the same because we are persuaded that there is no reasonable possibility that the erroneously propounded voir dire question contributed to the guilty verdict, i.e., asking the question was harmless error on this record.

 Stringfellow claims that there were two impermissible effects flowing from the offending voir dire question: 1) that the jurors' "only option was to find Mr. Stringfellow guilty," and 2) that excusing the absence of scientific investigative techniques and/or scientific evidence, e.g., the failure to test the handgun for latent fingerprints, diminished the State's burden to prove him guilty beyond a reasonable doubt. In a harmless error analysis in a criminal case, the State, as the prevailing party, must prove beyond a reasonable doubt that the error did not " 'contribute[ ] to the rendition of the guilty verdict.' " *Lee v. State,* 405 Md. 148, 164, 950 A.2d 125, 134 (2008) (citing *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976)). This means that a reviewing court, upon an independent review of the record, " 'must thus be satisfied that there is no reasonable possibility' " that the assumed error caused impermissibly the guilty verdict. *Lee,* 405 Md. at 164, 950 A.2d at 134 (quoting *Dorsey,* 276 Md. at 659, 350 A.2d at 678).

Assuming error in the present case, the error was not reiterated during jury instructions or other comments from the bench while the jury was present. While the error occurred during an important part of the trial process, the judge's management of closing argument ameliorated significantly any prejudice to Stringfellow. The judge permitted Stringfellow's attorney to make a closing argument, over the

---

**4.** *Stabb* and *Atkins* discuss when it may be permissible for courts to pose a voir dire question or a jury instruction to counter what has been referred to popularly as the "anti-CSI effect." Suffice it to say, these cases hold that it is error to pose such a question or instruction as a pre-emptive measure (as was done in the present case).

State's objection, about how the police officers' failure to request testing of the confiscated handgun for latent fingerprints created reasonable doubt. The judge overruled the prosecutor's objection immediately and in front the jury. Empowered by the judge's overruling of the State's objection, Stringfellow argued to the jury that the officers had the ability to test the handgun, but failed to do so. The failure to request a fingerprint analysis became, in defense counsel's words, "a big issue because I submit to you if they had dusted, if they had tried to lift fingerprints, they would not have found Mr. Stringfellow's prints on that gun. . . . I think that's very, very important." Stringfellow's attorney concluded by imploring the jury to find Stringfellow "not guilty because there is doubt in this case. . . ." Thus, the judge's management of closing argument defused any prejudicial impact of the erroneously propounded voir dire question.

 Although of less weight in persuading us that the error was harmless, we observe that two jury instructions in particular contributed to alleviating the sting of the error. We assume that jurors follow a judge's instructions. *Alston v. State,* 414 Md. 92, 108, 994 A.2d 896, 905 (2010) (quoting *State v. Moulden,* 292 Md. 666, 678, 441 A.2d 699, 705 (1982)); *see also Donaldson v. State,* 416 Md. 467, 499, 7 A.3d 84, 103 (2010) (quoting *Spain v. State,* 386 Md. 145, 160, 872 A.2d 25, 34 (2005)). We minimize in our analysis, however, the effect of general jury instructions because of our belief that they tend to have relatively attenuated curative effect. *Donaldson,* 416 Md. at 499, 7 A.3d at 103 (quoting *Lawson v. State,* 389 Md. 570, 601–02, 886 A.2d 876, 894–95 (2005)). Further, even curative instructions, when not given contemporaneously with the commission of the error, are of diminished curative value potentially. *Id.*

The judge propounded, contemporaneous with the erroneous voir dire question (whether merely fortuitously or as an intended "cure"), a conjoined instruction—question, which provided:

If selected as a juror, you're required to render a fair and impartial verdict based upon the evidence presented in the courtroom and the law as I describe it to you in my instructions at the end of this case. Is there any member of the jury panel who feels as if as a matter of your own personal conscience you disagreed with the law, you would disregard the law and instead follow your conscience?

As a consequence of the affirmative response, the judge screened four venire members from serving as jurors. Additionally, toward the end of trial, the judge admonished the jury during his final instructions, "I may have commented on evidence or asked a question of a witness. You should not draw any inferences or conclusions from my comments or questions either as to the merits of the case or as to my views regarding the witness." He instructed the jury also that the State had the constant burden to prove that Stringfellow was guilty beyond a reasonable doubt and that "if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty."

These instructions were correct statements of law. The judge gave the follow-on instruction/voir dire question immediately after the erroneous voir dire question. Although the final jury instructions were not given contemporaneously with the commission of the error, the judge gave them *after* he propounded the voir dire question. This is meaningful because in *Donaldson* we discredited general jury instructions that came *before* the error occurred. 416 Md. at 499–500, 7 A.3d at 102–103. Therefore, the jury instructions here, although a limited kind of cure, assisted in dislodging any residual bits of potential prejudice concerning the weight of presented (or unpresented) evidence and reminded the jury of the State's fixed burden of proof. *See Spain,* 386 Md. at 159–60, 872 A.2d at 33–34 (noting the likely diminution of prejudice resulting from pertinent jury instructions combined with other error-reducing factors); *see also United States v. Brown,* 441 F.3d 1330, 1354–55 (11th Cir.2006) (stating that, on plain error review, any potential misconception stemming from an ambiguous voir dire question was corrected with explicit, legally

correct jury instructions); *United States v. Noone,* 913 F.2d 20, 33–34 (1st Cir.1990) (concluding that a voir dire question that discredited prosecution's witnesses was corrected with final jury instructions). The most significant factor, however, that convinces us that the error did not contribute to the guilty verdicts in Stringfellow's case was the judge's allowance of Stringfellow's relevant closing argument.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR BAL-TIMORE CITY. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RE-SPONDENT.

BATTAGLIA and ADKINS, JJ., concur.

BELL, C.J., joins judgment only.

ADKINS, J., concurring, in which BATTAGLIA, J., joins.

I join the Majority opinion except with respect to its holding that Mr. Stringfellow waived his objection to the voir dire question. I write on this topic because our jurisprudence regarding waiver has wide-ranging consequences, and we must be cautious in its application.

Our precedents do not support finding that Stringfellow, after clearly stating his objection to the "CSI" question and obtaining the court's ruling, proceeded to waive that objection simply by answering affirmatively when the court asked, at the conclusion of jury selection, whether the defense was satisfied with the jury. I see the Majority's decision as extending *Neusbaum* beyond its intended scope, in a manner that fails to serve any valid policy goal. The question and answer at issue here were just a final opportunity, routinely provided by circuit courts, for the parties to raise new objections to the jury and obtain the court's ruling. This procedure is not intended to lengthen the trial by having counsel repeat objections already stated or trap the unwary litigant who

believes his objection has received its full and final consideration by the judge.

As the Majority acknowledges, only objections "directed to the composition of the jury" are waived by later accepting the jury as empaneled. Maj. Op. at 465, 469–70, 42 A.3d at 29, 32. This is because, as we explained in *Gilchrist v. State,*

> When a party complains about the exclusion of someone from or the inclusion of someone in a particular jury, and thereafter states without qualification that the same jury as ultimately chosen is satisfactory or acceptable, the party is clearly waiving or abandoning the earlier complaint about that jury. The party's final position is directly inconsistent with his or her earlier complaint.
>
> Nevertheless, **where the objection was not directly aimed at the composition of the jury ultimately selected, we have taken the position that the objecting party's approval of the jury as ultimately selected did not explicitly or implicitly waive his previously asserted objection, and his objection was preserved for appellate review.** (Citations and quotation marks omitted.)

*Gilchrist v. State,* 340 Md. 606, 618, 667 A.2d 876, 881–82 (1995) (emphasis added).

The Majority places Stringfellow's objection in this narrow category, opining that his objection to the trial court's question went to the jury's "composition."

> Like the objections in *Neusbaum* and *Glover,* Stringfellow's objection asserted that the venire members, if the relevant question was posed, would be unfit to sit as jurors in his trial; therefore, his objection went to the inclusion of prospective jurors on the jury selected ultimately.... A prejudicial voir dire question, when propounded, may inject the very prejudice that voir dire attempts to filter out. Therefore, an objection to [a] propounded, purportedly prejudicial, voir dire question relates directly to the composition of the jury. (Citations and quotation marks omitted.)

Maj. Op. at 471, 472, 42 A.3d at 33, 34.

This logic is strained to the point of being false, because it misconstrues what actually occurred in the courtroom.

Stringfellow objected to the question posed by the trial court, saying: "I would object to it being asked in voir dire." Maj. Op. at 466, 42 A.3d at 30. This was not an objection to any specific "venire members ... unfit to sit as jurors" for having heard the question. Rather, the objection was to *anyone* chosen to sit as a juror who had heard the question.

For an objection to relate to the "composition" of a collection of things, whether jurors or marbles, it must refer to which component parts are included or how they are chosen. *See The American Heritage Dictionary of the English Language* (4th ed.2006) (defining "composition" as "[t]he combining of distinct parts or elements to form a whole ... [t]he manner in which such parts are combined or related ... [g]eneral makeup ... a mixture or compound ... [a]rrangement of artistic parts so as to form a unified whole"). On the other hand, an objection to something that taints an entire collection, without changing its component parts, has nothing to do with its "composition." Like paint splattered on a collection of marbles, a prejudicial question heard by the entire venire simply does not affect the jury's "composition." In the case of a jury, "composition" refers to which jurors are included and how they are chosen, *i.e.,* "the exclusion of someone from or the inclusion of someone in a particular jury[.]" *Gilchrist,* 340 Md. at 618, 667 A.2d at 881.

*Gilchrist's* rule limiting waiver to objections "directly aimed at the composition of the jury" makes sense, because only such objections can fairly be said to be inconsistent with accepting the jury. *Gilchrist v. State,* 340 Md. at 618, 667 A.2d at 881–82. When the objection does not relate to the composition of the jury, accepting the jury is "not inconsistent" with the prior objection, and does not constitute waiver. *Id.; see also Couser v. State,* 282 Md. 125, 129–30, 383 A.2d 389, 391–92 (1978) (holding that defense counsel's objection to the court's refusal to allow her to inspect the prosecutor's notes on prospective jury members was not directly aimed at the jury's composition, and therefore was not waived by accepting the jury); *McFadden v. State,* 197 Md.App. 238, 252, 13 A.3d 68, 76 (2011) ("The State's reliance on *Gilchrist* ... is misplaced, as

appellants' claim of error does not lie upon the inclusion or exclusion of a prospective juror.").

As in *Gilchrist*, *Couser*, and *McFadden*, Stringfellow's objection, which was to the trial court's proposed course of action, was not inconsistent with his later acceptance of the jury. Simply reviewing the cases cited by the Majority in which waiver was found reveals that Stringfellow's situation is meaningfully different. The cases in which waiver was found involved:

> (1) an objection to a judge's refusal to strike prospective jurors for cause, *Mills*, 310 Md. at 39–40, 527 A.2d at 6; (2) an objection to the exclusion of a juror because of his beliefs about capital punishment, *Foster v. State*, 304 Md. 439, 450–51, 499 A.2d 1236, 1241–42 (1985); (3) a defendant who failed to object to unacceptable venire members after using all of his peremptory strikes, *White v. State*, 300 Md. 719, 729–30, 481 A.2d 201, 205–06 (1984); (4) an objection to a venire not selected randomly from registered-voter lists, *Glover v. State*, 273 Md. 448, 451–52, 330 A.2d 201, 203–04 (1975); and, (5) an objection to prejudicial remarks made by the prosecutor in earshot of the venire, *Neusbaum v. State*, 156 Md. 149, 162–63, 143 A. 872, 878 (1928).

Maj. Op. at 470, 42 A.3d at 32.

The first three cases clearly involved objections related to the composition of the jury, *i.e.*, which jurors should be included and how they should be chosen. This is entirely different from Stringfellow's objection to the trial court's announced intention to ask the venire about the "CSI effect." In the fourth case, the defendant objected to the inclusion of certain persons who were gathered in the streets by the sheriff to make up for the insufficient number of jurors in the venire. Again, this objection clearly went to the composition of the jury, unlike Stringfellow's objection to the trial court's proposed question. The last case, *Neusbaum*, found waiver for a different reason. The defendant did not waive his objection by accepting the jury, but rather waived by declining the trial court's offer to have a new panel of jurors:

[W]hen he had an opportunity of having an entirely new panel, but refused it and elected to take the panel the members of which had heard the remark, he cannot now be heard to say that they were prejudiced or unfair, and, while there was error in the ruling involved in the exception, defendant **by accepting the panel when he could have had a new one admitted that it occasioned no injury,** and it is not reversible.

*Neusbaum v. State,* 156 Md. 149, 163, 143 A. 872, 878 (1928), *superseded by statute on other grounds,* Maryland Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 388, *as recognized in Forbes v. State,* 324 Md. 335, 339, 597 A.2d 427, 429 (1991).

Mr. Neusbaum's waiver took the form of refusing the offer of a new panel, not simply stating that he accepted the panel. *Id.; see also White v. State,* 300 Md. 719, 758, 481 A.2d 201, 220 (1984) (Cole, J., dissenting) ("Nor is this case like *Neusbaum* ... where the trial court ... offered counsel the opportunity to start over with an entirely new panel."). Unlike Neusbaum, Stringfellow was not offered a new venire untainted by the objectionable "CSI" question.

Limiting the *Neusbaum* rationale to cases in which a new panel is offered makes sense because, unlike the other cases cited by the Majority, Neusbaum's objection was not to the jury's composition. Therefore, simply accepting the jury, as we explained in *Gilchrist,* would not have been inconsistent. Refusing an entirely new jury, however, **was** inconsistent with Neusbaum's objection, because empaneling a new jury would have removed any prejudice caused by hearing the prosecutor's improper remarks. *See Neusbaum,* 156 Md. at 163, 143 A. at 878 ("[D]efendant by accepting the panel when he could have had a new one admitted that [the remarks] occasioned no injury[.]"). Thus, without the offer of a new panel, Neusbaum's acceptance could not fairly be said to be inconsistent with his prior objection.

In all of the cases where a prior objection was waived by accepting the jury, the acceptance was directly inconsistent with the prior objection. In some cases, this was because the

objection was to the composition of the jury, and accepting the jury as composed was inconsistent. In other cases, like *Neusbaum,* it was because the objection related to a taint on the whole jury, and refusing the offer of a new panel was inconsistent. None of these cases presented the issue here, where Stringfellow's objection was to a "CSI" question that, he claimed, tainted the entire venire, and no new jury panel was offered. I would not find waiver because the trial court did not offer to empanel a new jury.

Finding the issue preserved, I conclude that it was error for the Circuit Court to ask the voir dire question. *See Stabb v. State,* 423 Md. 454, 456–57, 31 A.3d 922, 923 (2011) (holding that a "CSI" instruction was error); *Atkins v. State,* 421 Md. 434, 437–38, 26 A.3d 979, 980 (2011) (same). Although these cases involved jury instructions, rather than voir dire questions, we should not treat as legitimate a message sent to the jury during voir dire, when we have held that same message is prejudicial when given during jury instructions. Ultimately, however, I agree with the Majority that the error was harmless, for the reasons stated in its opinion.

Judge BATTAGLIA has authorized me to state that she joins in this concurring opinion.